IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JASON BRADFORD GLOVER,           :
#193482                          :
    Plaintiff,                :
                                :
vs.                              :    CIVIL ACTION 13-58-CG-M
                                :
CYNTHIA WHITE, *et al.,*          :
    Defendants.               :
                                :


REPORT AND RECOMMENDATION

    This is an action under 42 U.S.C. § 1983 brought by an Alabama prison inmate, Jason Bradford Glover, proceeding *pro se* and *in forma pauperis,* which has been referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). It is now before the undersigned on the Motion for Summary Judgment of Defendants, Cynthia White, Walter Meyers, Dr. Timothy Iliff and Shawn Geohagan[1] (Docs. 17, 19). After consideration of these pleadings and motions, the evidence submitted by the parties, and for the reasons set out below, it is recommended that Defendants' Motion for Summary Judgment be

---

[1]     Based on Plaintiff's Complaint, the docket sheet reflects that Defendants Shawn Geohagan and Walter Meyers' last names are spelled "Gohagan" and "Myers;" however, Defendant Geohagan's affidavit reflects a spelling of "Geohagan" (Doc. 17-2 at 1), and Defendant Meyers' affidavit reflects a spelling of "Meyers." (Doc. 19-1 at 3). The Court will refer to these Defendants as their names are spelled in their affidavits.

granted and Plaintiff's claims against Defendants be dismissed with prejudice.

## I. Facts and Proceedings

Based on its review of the record, the Court summarizes the parties' allegations that are material to the issues addressed in this Report and Recommendation.

On February 6, 2013, while housed at Fountain Correctional Facility ("Fountain"), Plaintiff filed his § 1983 Complaint naming as Defendants, Warden Cynthia White, Warden Walter Meyers, Dr. Timothy Iliff and Shawn Geohagan, CRNP. (Doc. 1). Plaintiff attached four medical grievances and a medical request to his Complaint as exhibits. On February 15, 2013, Plaintiff was transferred from Fountain to Easterling Correctional Facility ("Easterling"). (Doc. 17-3 at 69).

Defendants Iliff and Geohagan filed their Answer on April 5, 2013 (doc. 13) and Special Report on April 15, 2013. (Doc. 17). Attached to their Special Report are Plaintiff's medical records, some of which are germane to Plaintiff's claims, and some of which are not. The Court will consider all relevant portions of Plaintiff's medical records as they apply to his claims. Defendants White and Meyers submitted their Answer on May 29, 2013 (doc. 22) and Special Report on April 29, 2013. (Doc. 19). On August

15, 2013, the Court entered an Order converting Defendants'
Answers and Special Reports to a Motion for Summary
Judgment. (Doc. 25).

Generally, Plaintiff alleges in his Complaint that
Defendants violated his Eighth Amendment rights by being
deliberately indifferent to his medical needs, i.e. genital
warts, and violating "privacy procedures . . . at GK
Fountain Prison and Infirmary." (Doc. 1 at 4).

Plaintiff is serving a twenty-eight year prison
sentence and, at the time he filed his Complaint, was
housed in the segregation unit at Fountain. (Docs. 1, 17-2
at 5, 2). Inmates housed in segregation have a higher
level of security than those in general population. (Doc.
17-2 at 2). Previously, Plaintiff was an intravenous drug
user and has had multiple sexual partners. (Doc. 17-4 at
15). As a result, Plaintiff contracted the Human Papilloma
Virus ("HPV") and has had genital warts for over ten years.
(Doc. 17-1 at 2). The record reflects that, while at
Fountain, Plaintiff received multiple rounds of successful
treatment for his genital warts beginning as early as 2011
and continuing on until he was transferred. (Doc. 17-3 at
57). However, Plaintiff "belie[ves that] this virus HPV

can be cancerous[2] to [his] health and, [in December of 2012,[3]] sought treatment for it from Dr. Iliff." (Doc. 1 at 5, 8).

Defendant Iliff is a medical doctor licensed to practice medicine in the State of Alabama since 1983 and currently is the Medical Director at the Fountain where Plaintiff was housed at the time of his complaints. (Doc. 17-1 at 1-2). To treat Plaintiff's genital warts, Defendant Iliff ordered a round of Podphyllin- a topical medication that is applied to genital warts once weekly for four to six weeks. (*Id.* at 2). It is recommended that the individual using the medication shower shortly after applying the medication to alleviate burning. (*Id.*). Plaintiff received his first application of Podphyllin with Defendant Iliff but did not return for additional applications for approximately four to five weeks. (*Id.* at 3). Defendant Iliff explained to Plaintiff that he needed

---

[2]    According to the Center for Disease Control and Prevention, the "types of HPV that can cause genital warts are not the same as the types that can cause cancer." *Sexually Transmitted Diseases (STDs), HPV and Men- Fact Sheet,* Center for Disease Control (Feb. 23, 2012), http://www.cdc.gov/std/hpv/stdfact-hpv-and-men.htm.

[3]    In Plaintiff's Complaint, he alleges that the inadequate medical treatment occurred on December 26, 2013, however, that is clearly in error as December 26, 2013 is a date yet to occur. The Court notes this error and assumes that Plaintiff intended to allege the year 2012 as to when the inadequate treatment occurred. (Doc. 1 at 4).

to return to the health care unit for the applications to be beneficial. (*Id.*). Thereafter, Plaintiff returned for applications every week for two to three weeks before he was transferred to Easterling. (*Id.*). As a result of these applications, Plaintiff contends that Defendant Iliff was "deliberately indifferent to [his] medical needs, [provided] inadequate medical attention and testing, screening and treatments. Violating [sic] my medical needs. 8th Amendment [sic] ect [sic]." (*Id.* at 8).

For at least one of the applications he received before his transfer to Easterling, Plaintiff was seen by Defendant Geohagan. Defendant Geohagan is a certified registered nurse practitioner licensed in the State of Alabama since 2002 and employed by Corizon, Inc. to provide medical care to inmates at Fountain. (Doc. 17-2 at 1). During this visit with Defendant Geohagan, Plaintiff informed him that, due to being housed in the segregation unit, he would not be showering on the subject day. For that reason, Defendant Geohagan did not apply the Podphyllin to Plaintiff's genital warts. (*Id.* at 2). Instead, Defendant Geohagan attempted to inspect Plaintiff's genital warts in his office. (*Id.*). Due to the heightened security required for a segregation inmate, a correctional officer was assigned to be with him at all

times, including while Defendant Geohagan inspected Plaintiff's genital warts.  (Docs. 1, 17-2 at 14, 2-3). Plaintiff did not want the officer present during the inspection and refused to allow Defendant Geohagan to inspect his genital warts.  (Doc. 17-2 at 3).  Defendant Geohagan did not inspect Plaintiff's genital warts and rescheduled his next Podphyllin treatment in one week on "shower day."  (Doc. 17-3 at 56).  Plaintiff contends that Defendant Geohagan violated his privacy rights when he attempted to treat Plaintiff in front of the correctional officer instead of behind a privacy curtain, and as a result of this violation, rumors have spread about his condition.  (Doc. 1 at 14).

Plaintiff filed a medical grievance regarding his alleged breach of medical confidentiality to which medical staff responded indicating that Plaintiff was examined in an office and with no other inmates present and that it is standard procedure for an officer to be present during examinations and that curtains are available.  (*Id.*). Plaintiff was told that although security is precedent, the Health Care Unit strives to maintain privacy during examinations.  (*Id.*).  Plaintiff was instructed to refer his concerns to DOC if he believed that an officer discussed information related to his medical condition.

(*Id.*).  There is no indication in the record that Plaintiff followed through with these instructions.

On January 19, 2013, and after previously refusing to receive treatment from Defendant Geohagan, Plaintiff filed another medical grievance alleging a complete denial of medical treatment and a request for a "medical transfer to a facility with privacy showers and proper treatment help [sic]."  (Doc. 1 at 15).  The medical staff responded to the grievance apologizing for his frustration but stated that he was in fact seen by the nurse practitioner on January 8, 2013 and that treatment would only be administered when he agreed to receive it.  (*Id.*).  Plaintiff was instructed to report his requests regarding showers to the DOC.  (*Id.*).  It is unclear whether Plaintiff reported his shower request to the DOC; however, in his affidavit, Defendant Iliff states that Plaintiff's genital warts do not restrict him in any form or fashion and that his genital warts did not necessitate that Plaintiff shower alone.  (Doc. 17-1 at3).  Even so, the medical staff at Fountain have no control over whether the inmates can shower individually or collectively.  (*Id.*).

In addition to seeking genital warts treatment, Plaintiff requested to be tested for the particular strand of HPV he carries (*id.* at 14) and for other "STD's, HIV or

any other diseases sexually contracted.  (*Id.* at 12).
Defendant Iliff "informed Plaintiff that there was no
medical reason for him to be tested for the HPV strain or
any other sexually transmitted diseases due to the fact
that he show[ed] no signs of other STD's."  (Doc. 17-1 at
2).

In his Complaint, Plaintiff specifically alleges
negligence and Eighth Amendment violations of deliberate
indifference through inadequate medical care against
Defendants Iliff and Geohagan; violation of privacy rights
against Defendant Geohagan; and contends that Defendants
White and Meyers were likewise negligent and deliberately
indifferent to his medical needs by maintaining inadequate
medical grievance procedures and failing to respond to "any
requests or medical needs" or "grievance wrote [sic] about
privacy and [] medical confidentiality."  (Doc. 1 at 6-8).
Plaintiff alleges that the "negligence and poor treatment
and follow up medically [sic]" has caused him "scarring and
skin damage" as well as the need for a "medical transfer."
(Doc. 1 at 5).

For relief, Plaintiff requests "[a] declaration that
the acts violated plaintiffs [sic] rights under the
constitution and laws of the United States.  A preliminary
and permanent injunction for Wardens to medically transfer

Plaintiff imediately [sic]. Nominal damage [sic], compensatory damages, punitive damages, a jury trial on all issues triable by jury. Plaintiff's cost [sic] in suit. Any additional relief this court [sic] deems just proper [sic] and adequate and equitable." (Doc. 1 at 9).

In response to Plaintiff's allegations, Defendants Iliff and Geohagan attest that medical treatment was never delayed or denied by them or the medical staff at Fountain, and in their professional opinion and personal knowledge, Plaintiff's care and treatment was always within the standard of care prescribed by medical doctors and nurse practitioners in the State of Alabama. (Docs. 17-1, 17-2 at 3, 3). Defendants White and Meyers attest that they are wardens at Fountain and though they have had the occasion to know Plaintiff, they were not involved in any medical plan or treatment with regard to necessary medical care requested by or given to Plaintiff at Fountain. (Docs. 19-1 at 1, 3-4). They also indicate that all medical decisions related to necessary medical care are made by Dr. Iliff or one of the nurses employed by Corizon. (*Id.*). Defendants' Motion for Summary Judgment is now before the Court.

## II. DISCUSSION

### A. Summary Judgment Standard

In analyzing the propriety of a motion for summary judgment, the Court begins with the following basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to the party who moves for summary judgment. FED.R.CIV.P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989). However, Rule 56(e) states that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

FED.R.CIV.P. 56(e).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).  "Summary judgment is mandated where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

## B.  Eighth Amendment Violations

### 1. Defendants Iliff and Geohagan

As set out above, Plaintiff alleges in his § 1983 Complaint that Defendants violated his rights under the Eighth Amendment by being negligent and providing him with denied, delayed and/or inadequate medical care pertaining to his genital warts.  Section 1983 states in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of

> any rights, privileges, or immunities
> secured by the Constitution and laws, shall
> be liable to the party injured in an action
> at law, suit in equity, or other proper
> proceeding for redress. . . .

42 U.S.C. § 1983.

To establish a violation of the Eighth Amendment related to medical care in the prison context, a prisoner must allege acts or omissions sufficiently harmful to evidence "deliberate indifference to a serious medical need." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). To show deliberate indifference, the prisoner must satisfy both an objective and subjective component. *Hill v. DeKalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1186 (11th Cir. 1994), *overruled in part on other grounds, Hope v. Pelzer,* 536 U.S. 730, 739 (2002).

With regard to the objective component, a prisoner must allege both an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm, and also that the response by the prison official to that need was poor enough to constitute an unnecessary and wanton infliction of pain. *Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir. 2000). "In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation." *Hill,* 40 F.3d at 1187-88. An inmate claiming

an unconstitutional delay in medical treatment must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed. *Id.* at 1188.

For the subjective component, a prisoner must allege, and ultimately prove, three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence. *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999). It is clear that in the context of a § 1983 lawsuit, "mere accidental inadequacy, negligence in diagnosis or treatment, [and] even medical malpractice" is not actionable. *Taylor* at 1258. Equally important in the context of this case is the fact that a prisoner cannot establish a constitutional violation simply because he "may have desired different modes of treatment" than that which was provided to him. *Hamm v. DeKalb Cnty.,* 774 F.2d 1567, 1576 (11th Cir. 1985). Such course of treatment claims, by definition, involve the "exercise of professional judgment," *Estelle,* 429 U.S. at 105, and, as such, are not actionable under the Eighth Amendment. *See also Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989); *accord Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)(disavowing any attempts to second-guess the propriety or adequacy of a

particular course of treatment, as this, along with all
other aspects of health care, remains a question of sound
professional judgment).

Plaintiff has been living with genital warts for over
ten years prior to receiving treatment from Defendants
Iliff and Geohagan.  While the parties have presented no
evidence that genital warts are or are not a serious
medical condition posing an unreasonable risk to
Plaintiff's health if left untreated, and, there being no
case law in this Circuit expressly stating that genital
warts are or are not a serious medical need,[4] for purposes
of this analysis, the Court will treat them as if they are
a serious medical condition yet refrain from making that
express determination.

Assuming Plaintiff's genital warts are considered a
serious medical need, Plaintiff has failed to present the
Court with verifiable medical evidence showing that
Defendants Iliff and Geohagan knew about but purposely
disregarded Plaintiff's serious medical needs by providing
treatment that was delayed, denied or so grossly

---

[4]     *See Wright v. Harrison,* 2011 WL 4744358, *2 (M.D.Ga.
August 15, 2011)(concluding that defendant doctor was not
deliberately indifferent to Plaintiff in treating his
serious medical need, anal warts, but making no express
determination as whether genital warts constitute a serious
medical need).

incompetent or inadequate as to amount to no treatment at all, or that their conduct had any detrimental effect on the exacerbation of Plaintiff's medical needs. *See Hill, supra,* p. 12. Instead, it is clear that Defendants treated Plaintiff with regular and adequate medical care. Plaintiff received multiple office visits, inspections of his genital warts, topical medication for his warts, the option to receive treatment on "shower day," as well as rescheduling treatment for a day when a security officer may not be present during the inspection. (Docs. 17-1, 17-2)(*see also* Doc. 17-3 at 52-58). Based on Plaintiff's medical records, the Court finds that Plaintiff has failed to prove that Defendants denied him medical care.

Resolving Plaintiff's claims that he was completely denied medical care, we turn to the adequacy of Plaintiff's medical care. Plaintiff admits that he received care from Defendants Iliff and Geohagan, but he disagrees with their course of treatment. (Doc. 1). As set out above, where a prisoner has received some medical treatment and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims which sound in state tort law. *Wright v. Harrison,* 2011 WL 4744358, *2 (M.D.Ga. 2011)(*citing Westlake v. Lucas,* 537 F.2d 857, 860

n. 5 (1st Cir. 1981). Plaintiff has again failed to present any verifiable medical evidence that Defendants Iliff and Geohagan should have provided him with a different course of treatment. Rather, he makes insufficient and unsupported statements that his care was inadequate; none of which rise to the level an Eighth Amendment violation.

Moreover, without verifiable medical evidence proving otherwise, Plaintiff's claims for deliberate indifference are pled in an unsupported and conclusory manner. It is well settled that a conclusion cannot be taken as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *see also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000)("[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value"); *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984)(a plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment).

Accordingly, Plaintiff's general averments unaccompanied by any supportive facts, which tend to prove the unconstitutionality of Plaintiff's treatment, are insufficient to raise a claim under the purview of the Eighth Amendment. Thus, Plaintiff's Eighth Amendment

medical claims for deliberate indifference against
Defendants Iliff and Geohagan are due to be dismissed.

2. Defendants White and Meyers

Plaintiff alleges that Defendants White and Meyers
were deliberately indifferent to his medical needs because
the "treatment procedures [were] inadequate and grievances
through medical [sic]" and by "den[ying] and not
respond[ing] to any request or adequate medical needs . . .
[and] a grievance wrote [sic] about privacy and my medical
confidentiality." (Doc. 1 at 6). Plaintiff's Complaint is
silent as to what capacity he is suing Defendants.
Consequently, the Court will treat Plaintiff's allegations
against Defendants White and Meyers as if alleged in their
official capacities. As reasoned below, because
supervisors may rely on the judgment of their contracted
medical providers, and because those providers have not
been found to be deliberately indifferent to Plaintiff's
serious medical needs, Plaintiff's claims against
Defendants White and Meyers likewise fail as a matter of
law.

The language of § 1983 requires proof and an
affirmative causal connection between actions taken by the
defendants and the constitutional deprivations alleged by
the plaintiff. *Marsh v. Butler Cnty.,* 268 F.3d 1014, 1059

(11th Cir. 2001). The causal connection may be established by proof that the official was personally involved in the acts that resulted in the constitutional deprivation, or where the official has established or utilized a policy or custom that results in deliberate indifference to a prisoner's rights. *Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986). Likewise, prison officials who rely on medical personnel for clinical determinations of inmates' medical needs lack the requisite knowledge for deliberate indifference, absent evidence that medical personnel's determination was unreliable. *Lynch v. Jackson,* 478 F.App'x 613, 619 (11th Cir. 2012).

The allegations against Defendants White and Meyers in Plaintiff's Complaint fail to establish a causal connection between Plaintiff's injury and Defendants White and Meyers. Plaintiff does not indicate how Defendants White and Meyers violated his Eighth Amendment rights, nor does he allege any direct action or inaction by either Defendant regarding his medical treatment. Likewise, Plaintiff fails to sufficiently allege that Defendants utilized a policy or custom, which resulted in deliberate indifference to Plaintiff. Rather, he merely alleges that Defendant Meyers failed to respond Plaintiff's medical grievance on January 8, 2013 (doc. 1 at 6). This unsupported allegation is

directly contradicted by Plaintiff's own exhibit attached
to his Complaint.  (*See* Doc. 1 at 14 medical grievance
dated January 8, 2013, which was responded to by a member
of the medical staff addressing his needs).  Without
establishing a causal connection between his injury and
Defendants' action or inaction, Plaintiff's allegations
against Defendants White and Meyers are merely conclusory,
and, as noted above, conclusory allegations are
insufficient to oppose a motion for summary judgment.
*Fullman,* 739 F.2d 553, 556-57.  Such claims based on
conclusory allegations are due to be dismissed.

C. Right to Privacy Claims

Plaintiff contends in his Complaint that his right to
privacy during medical treatment was violated by the
"doctors and wardens" (doc. 1 at 4), when Defendant
Geohagan "tried to violate [Plaintiff's] privacy rights by
treating [him] in open and not behind [sic] privacy curtain
in front of Officer Murphy [].  The treatment was on my
genital area.  Denying me [sic] or rescheduleing [sic] the
procedure."  (*Id.* at 7).  Plaintiff also alleges that
rumors have spread as a result of the correctional officer
being present during the exam.  (Doc. 1 at 14).

To the extent that Plaintiff alleges he was subjected
to cruel and unusual punishment under the Eighth Amendment

when Defendant Geohagan attempted to inspect his genital area with a correctional officer in the examination room, the Court finds these allegations lacking in merit. Although prisoners are entitled to the minimal civilized measures of life's necessities, *Farmer v. Brennan,* 511 U.S. 825, 833-34 (1994), conditions that create temporary inconveniences and discomforts or that make confinement in such quarters unpleasant are insufficient to state an Eighth Amendment claim as the conditions must involve the unnecessary and wanton infliction of pain. *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981).

Other than the conclusory allegation that "rumors have spread" (doc. 1 at 14), Plaintiff has failed to allege that any protected medical information the correctional officer may have gleaned during the doctor visit was disseminated for the purpose of imposing cruel and unusual punishment. At most, Plaintiff may have experienced discomfort or embarrassment by being examined in front of the correctional officer; however, there are legitimate penological interests in having security officers present during medical examinations which outweigh Plaintiff's discomfort or embarrassment. Their presence during a medical exam in and of itself does not give rise to an Eighth Amendment claim or provide a basis for judicial

relief under the Constitution.  *See Johnson v. O'Donnell,
Inmate Complaint Reviewer,* 2001 WL 34372892, *10 (W.D.Wis.
Aug. 24, 2001).  Therefore, Plaintiff's claims do not rise
to the level of an Eighth Amendment violation.

In the alternative, it appears that Plaintiff is
asserting that Defendants violated his right to physician-
patient confidentiality by allowing the correctional
officer to remain in the room during Plaintiff's
examination by Defendant Geohagan.  Plaintiff's reliance on
this privilege is misplaced, as federal courts do not
recognize a physician-patient privilege.  *Whalen v. Roe,*
429 U.S. 589, 602 n. 28 (1977).  Additionally, the
physician-patient privilege is inapplicable here because it
protects a person who has imparted confidential information
revealed in the course of litigation.  It is an evidentiary
rule which does not confer substantive constitutional
rights on Plaintiff."  *Mackler v. Chapman,* 2011 WL 9521094,
*6 (M.D.Ga. May 11, 2011); *see also Low v. Stanton,* 2009 WL
595985, *5 (E.D.Cal. Mar. 4, 2009); *Floyd v. Emmet Cnty.
Corr. Facility,* 2006 WL 1429536, at *4 (W.D.Mich. May 23,
2006).  The privilege thus does not apply in the context of
a prisoner who does not wish security guards to be present
at his medical examination.  *Johnson,* 2001 WL 34372892,
*10.

The Court also notes that Plaintiff expressly refused to receive an inspection and/or treatment from Defendant Geohagan in front of the correctional officer thereby further diminishing any chance to raise a right to privacy claim for treatment that did not occur. (Doc. 17-2 at 2-3). Accordingly, Plaintiff fails to allege any claim based on the alleged violation of his privacy.

### D.  Medical Transfer

In his prayer for relief, Plaintiff requests a "preliminary and permanent injunction for Wardens to medically transfer Plaintiff immediately." (Doc. 1 at 9). According to the record, and for reasons other than medical, Plaintiff was transferred from Fountain to Easterling on February 15, 2013. (Docs. 17-1, 17-2, 17-3 at 3, 3, 69). A transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *Cnty. of L.A. v. Davis,* 440 U.S. 625, 631 (1979); *see also Wooden v. Bd. of Regents of Univ. Sys. of Ga.,* 247 F.3d 1262, 1284 (11th Cir. 2001)(a plaintiff is entitled to injunctive relief only if he can show a "real and immediate- as opposed to a merely conjectural threat or hypothetical- threat of future injury"). Clearly, as Plaintiff is no longer housed at Fountain, his request for declaratory and preliminary and permanent injunctive relief

incites no threat of irreparable future injury and is due to be dismissed and/or rendered moot.

## III. CONCLUSION

Based on the foregoing reasons, this Court concludes that Defendants Timothy Iliff, Shawn Geohagan, Cynthia White and Walter Meyers are entitled to Summary Judgment in their favor on all claims asserted against them by Plaintiff. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action against these Defendants be dismissed with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the

Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 18th day of October, 2013.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE